LITTLE ROCK RAILWAY & ELECTRIC COMPANY *v.* NEWMAN.

Opinion delivered June 14, 1909.

ELECTRICITY—REGULATION—CHARGE FOR READINESS TO SERVE.—Acts 1905, p. 701, providing in substance that in cities of the first class water, gas and electric companies shall furnish meters free of charge and furnish tables of the prices charged per thousand units, and that charges for such commodities shall be based on readings of the meters, does not prohibit such companies from making a minimum charge per month where they put in meters and hold themselves in readiness to serve their patrons.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Rose, Hemingway, Cantrell & Loughborough.* for appellant.

1. By the common-law rule a charge for "readiness to serve" is reasonable and lawful. 60 N. Y. Suppl. 561; 34 Mo. App. 501. The act of 1905 (Acts of '05, p. 700) does not forbid a charge for readiness to serve. It forbids a *charge for me-*

*ters* and requires them to base their charges *for the commodity furnished,* etc. *Expressio unius est exclusio alterius.* Hence the act impliedly authorizes a charge for any other service rendered. Endlich, Int. Stat. § 399; Lewis' Suth. Int. Stat. § 491 *et seq.;* 1 Ark. 540; 59 *Id.* 356; 70 Ark. 481; 71 *Id.* 561. Statutes in derogation of the common law are strictly construed. Cases *supra.*

2. If the act prohibits a minimum charge for actual expenses in keeping ready to serve, it is unconstitutional because it denies the equal protection of the law and takes property without due process of law. 169 U. S. 526; 116 *Id.* 331; 128 *Id.* 179; 85 Ark. 18.

*J. A. Comer* and *John T. Castle,* for appellee.

It may be admitted that, in the absence of a statute to the contrary, public utility corporations may charge a minimum monthly charge for readiness to serve under the common-law rule, but here we have a statute to the contrary, and 60 N. Y. Suppl. 561 does not apply. Joyce on Electricity, § 527; 34 Mo. App. 501; 122 App. Div. 203; 156 U. S. 649; Beale & Wyman, Railroad Regulation, § 443; 79 N. W. 353; 72 N. W. 713; 54 Ark. 112; 15 S. W. 18; 60 Ark. 221. Appellant could only charge for the commodity used, in accordance with the statute. It is not entitled to make a profit from each patron; the business of the whole system should be considered.. One customer cannot be made to pay for or make up losses suffered by dealing with a large customer at reduced rates. 156 U. S. 649; Beale & Wyman on Railroad Regulations, § 443; *Ib.* 446, 60 Ark. 221; 33 L. R. A., 177 notes; 164 U. S. 578.

McCULLOCH, C. J. This case involves the construction of an act of the General Assembly of 1905, entitled "An act to regulate water, gas and electric companies in cities of the first and second class," the first two sections of which read as follows:

"Section 1. That all persons, partnerships or corporations owning or operating any company or enterprise for the furnishing of water, gas or electricity to the general public, in cities of the first and second class, in the State of Arkansas, in case they furnish meters to their patrons for the purpose of measuring such

water, gas or electricity (and in cities of the first class such meters shall be furnished upon demand without charge), are hereby required to supply printed tables to their patrons semi-annually, on the first day of January and July of each year, which said tables shall show the price charged per thousand units for such water, gas or electricity.

"Section 2. That all such water, gas or electric companies shall base their charges for such commodities upon the reading of said meters, and shall charge for same as per printed tables supplied patrons, and bills or statements rendered patrons shall show the number of units charged for."

The third section of the act prescribes a penalty against a company violating its provisions. Acts 1905, p. 701.

This controversy between appellant company and appellee, a resident of the city of Little Rock, arises over the attempt of the former to impose on the latter, before connecting his residence with the lighting plant so as to furnish it with electric current, a contract binding the latter to the following stipulation: "It is expressly understood and agreed that a minimum monthly charge of $1.11 for each separate month shall be paid, covering readiness to serve expense; but if the quantity of electricty consumed each month shall amount to said sum, no readiness to serve charge will be made."

Counsel for appellant contend that the act in question does not attempt to regulate charges for service, and that under a proper construction of its provisions the company is entitled, if it sees fit, to make an uniform minimum monthly charge against customers, sufficient to compensate it for its outlay and expense in keeping its machinery and appliances in readiness to adequately supply them with light at any moment. On the other hand, counsel for appellee contend that the act limits the charges to the actual readings of the meter, and that no charge can be made except for the quantity of current actually consumed, according to the rates fixed for all customers.

The act is in derogation of the right of freedom of contract, and should be strictly construed. *Watkins* v. *Griffith,* 59 Ark. 344; *St. Louis & S. F. Rd. Co.* v. *Cooksey,* 70 Ark. 481.

The first section is somewhat ambiguous, and the most that can be made out of it is that, in cities of the first class, com-

panies or concerns operating the business of furnishing water, gas or electricity to the public must furnish meters to patrons free of charge, and publish, in the manner prescribed, tables of prices charged per thousand units. The second section provides in substance that charges for such commodities shall be based on readings of the meters, and shall be in accordance with the published tables.

A close analysis of the statute does not discover any attempt to regulate charges further than to require publicity and uniformity. The manifest design of the act is to provide means whereby the consumer may be informed as to the exact charge for service, and to require uniformity of charges against all customers using like quantities of the commodity. Nowhere does this statute attempt to say that persons using different quantities of the commodity in a given time must be charged the same price per thousand units, nor that a minimum charge per month for service may not be imposed. The Legislature did not intend to compel the company to put in a meter and hold itself in readiness to serve those who use none of the commodity to be supplied, and the language of the act does not warrant the construction that the fixing of the minimum charge was to be forbidden. If that had been intended, it could have been clearly expressed. So it matters not whether it be termed a "readiness-to-serve charge," or a "minimum rate charge," it amounts to the same thing, and is not forbidden by the language of the statute. The fact that the chage for meters is expressly forbidden negatives, under the maxim *expressio unius est exclusio alterius,* any intention to forbid any other charge uniformly made against all patrons using the same quantity of the commodity.

A regulation of the charges for such service should be just to the company as well as to all patrons, so as to allow compensation to the former and reasonable, uniform rates to the latter, according to the amount of the commodity consumed. One class of patrons should not be favored at the expense of another. And we do not hold that a regulation of charges, based exclusively on the number of units of the commodity consumed, and confined to a fixed charge for each given number of units consumed, would not be sustained if found to be just to the company and all

its patrons. The Legislature has not, we think, attempted to do
that.

The decree is reversed, and the cause remanded with direc-
tions to overrule the demurrer to the complaint, and for further
proceedings not inconsistent with this opinion.

BATTLE, J., absent and not participating.

WOOD, J., dissenting.